**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ARCELIA B.,                                    )
                                               )
            Plaintiff,                         )
                                               )        No. 18 C 1222
      v.                                       )
                                               )        Judge Sara L. Ellis
ANDREW SAUL, Commissioner                      )
of Social Security Administration,[1]          )
                                               )
            Defendant.                         )

**OPINION AND ORDER**

Plaintiff Arcelia B. seeks to reverse the final decision of the Commissioner of Social

Security Administration denying her application for disability insurance benefits ("DIB") under

Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423(d), and supplemental security

income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381(a). In addition to

Arcelia B.'s appeal of the decision denying her application for benefits, the Commissioner has

filed a motion for summary judgment, asking the Court to uphold the decision. Because the

Administrative Law Judge ("ALJ") supported Arcelia B.'s residual functional capacity ("RFC")

determination with substantial evidence and properly assessed her subjective statements about

her symptoms, the Court affirms the ALJ's decision.

**BACKGROUND**

**I.      Medical History**

In Arcelia B.'s initial claim for DIB and SSI, she stated that her rheumatoid arthritis and

pacemaker implant prevented her from working beginning on September 26, 2014. AR 67. In

---

[1] The Court substitutes Andrew Saul for Nancy Berryhill as the proper defendant in this action. Fed. R.
Civ. P. 25(d).

2007, she had a myocardial infraction and received a defibrillator. AR 357. In March 2011, a physician diagnosed her with rheumatoid arthritis. AR 418.

Arcelia B. started seeing Dr. Syed Rizvi, a rheumatologist, on March 27, 2014, with complaints of joint pain. *Id*. In Arcelia B.'s physical examination results, Dr. Rizvi wrote that her cervical spine had a full range of motion; she had complete handgrip and swelling and tenderness on her left third proximal interphalangeal ("PIP") joint; the flexion of both of her wrists was limited to 20 degrees and their extension to 30 degrees; her right elbow had a flexion contracture of 20 degrees; and her wrists, elbows, and shoulders were within normal limits. AR 419. Concerning Arcelia B.'s lower limbs, Dr. Rizvi noted that she had a full range of motion in her hips and knees. *Id*. Additionally, he wrote that Arcelia B.'s right ankle had mild swelling, and both of her ankles had tenderness and pain in their flexion, extension, and eversion. *Id*. To address her symptoms, Dr. Rizvi prescribed meloxicam and prednisone. AR 418. On April 15, Arcelia B. complained to Dr. Rizvi of experiencing pain in her ankles when at rest or when performing a physical activity. AR 413. In response, Dr. Rizvi added methotrexate sodium and sulfasalazine to her prescriptions and increased the dosage of prednisone. AR 417. Dr. Rizvi assessed that Arcelia B.'s rheumatoid arthritis was worsening, but her physical examination results remained the same from her previous appointment. *Id*.

On June 4, Arcelia B. complained to Dr. Rizvi of pain in both wrists, her left foot, and both ankles, describing the pain as constant and at its worst early in the morning. AR 410. She also reported that the increased dosage of prednisone made her eyes swell. *Id*. Dr. Rizvi decreased the dosage of prednisone and increased the dosage of the methotrexate sodium instead. AR 411. Arcelia B.'s physical examination results remained the same from her previous appointments. AR 412. On July 18, Arcelia B. went to the emergency room for back and chest

pain. AR 352. Her electrocardiogram and chest x-ray showed no abnormalities, and a physician discharged her the following day. AR 354. On September 10, Arcelia B. presented to Dr. Rizvi with complaints of constant, aching pain, reaching ten on a ten-point scale. AR 407. Dr. Rizvi found the same results for Arcelia B.'s physical examination and increased the dosage of methotrexate sodium. AR 409. On December 9, Arcelia B. reported to the emergency room complaining of arm and hand numbness and neck pain. AR 489. The next day, she saw Dr. Rizvi, reporting wrist, right knee, and ankle swelling. AR 572. Dr. Rizvi found the same results for Arcelia B.'s physical examination. AR 573. He again increased the dosage of methotrexate sodium and also prescribed Xeljanz. AR 574. On December 24, Arcelia B. saw her primary care physician, Dr. Elsa Valero. AR 539. During that visit, Arcelia B. indicated she could no longer work because of hand numbness and weakness. *Id.* Dr. Valero noted that, although Arcelia B. reported muscle weakness and joint pain, she did not report muscle aches or back pain. AR 540. Dr. Valero prescribed diclofenac potassium for neck pain. AR 542.

On February 4, 2015, Arcelia B. complained to Dr. Rizvi of pain in her neck, hands, right knee, and ankles. AR 567. She also reported that Xeljanz caused her dizziness and nausea. AR 570. Her physical examination results remained the same. *Id.* Dr. Rizvi again increased the methotrexate sodium dosage. *Id.* On April 7, Dr. Rizvi again recorded the same physical examination results, with Arcelia B. indicating she had swelling in her wrists and right knee and experienced ankle stiffness. AR 562, 566. Dr. Rizvi increased Arcelia B.'s sulfasalazine dosage. AR 566. On July 7, Dr. Rizvi increased the dosage of sulfasalazine and prednisone, even though Arcelia B.'s physical examination results remained the same. AR 648. On October 6, Arcelia B. complained to Dr. Rizvi that the pain in her neck and back increased with stress and weather changes. AR 639. Dr. Rizvi noted slight changes to Arcelia B.'s physical examination results,

recording swelling and tenderness of right ulnar prominence, painful wrist movements, and mild swelling and tenderness of the left ankle. AR 643. Arcelia B.'s physical examination results did not change between her October 6 and December 5 appointments. AR 638.

In the report of Arcelia B.'s June 7, 2016, visit, Dr. Rizvi removed the record of painful wrist movements and increased the methotrexate sodium dosage. AR 629. Dr. Rizvi added back an observation that Arcelia B. had limited range of motion in her left wrist due to pain during her September 6 appointment, in addition to noting bilateral knee pain with pre-patellar pressure. AR 623. On December 6, 2016, Arcelia B. reported to Dr. Rizvi that the pain in her neck, lower back, left wrist, right knee, and left ankle sometimes left her bedridden for a few days. AR 616. Her physical examination results remained unchanged from her previous appointment. AR 618.

In June 2015, Arcelia B. saw Dr. Valero because she had been feeling depressed. AR 328–29. Dr. Valero prescribed Paxil and Xanax. *Id.* Arcelia B. saw Dr. Valero again in September 2016 for depression, and Dr. Valero referred her for therapy and increased her Paxil dosage. AR 606, 609. Arcelia B. followed up with a therapist, who diagnosed her with major depressive disorder, recurrent episode, moderate. AR 595. She participated in individual therapy sessions to manage her symptoms. AR 596.

## II. Employment History

Arcelia B. was born in 1975, and was forty-one years old at the time of the ALJ's decision. AR 67, 14. She has a high school education. AR 264. From 2005 to September 2014, she worked as a cook in a cafeteria, taking orders, handling transactions, taking inventory, cleaning the cafeteria, and washing dishes. AR 255–56. She also lifted boxes of chicken and vegetables and carried them five to ten feet throughout the day. *Id.* The heaviest weight she

lifted was twenty pounds.  *Id.*  For one-third to two-thirds of a given workday, she lifted less than ten pounds.  *Id.*

## III.    Disability Claim and Hearing History

On October 1, 2014, Arcelia B. filed for DIB and SSI, alleging that she became disabled on September 26, 2014.  AR 252.  The agency denied her claims on December 17, 2014, and again on reconsideration on May 12, 2015.  AR 72, 92.  Arcelia B. requested a hearing, which occurred on November 16, 2016, and at which she had counsel and an interpreter.  AR 38. Arcelia B. and Edward J. Pagella, a vocational expert, testified at the hearing.  AR 20.

### A.    Arcelia B.'s Limitations and Activities

Prior to the hearing, in a function report completed in November 2014, Arcelia B. indicated she needed help with most household tasks and that her sister helped her take care of her son.  AR 276–77.  She complained that pain interfered with her ability to undertake most activities as well.  AR 276–83.  In another report completed in April 2015, she emphasized that her hands, wrists, feet, and right knee were always swollen, making it difficult for her to walk and use her hands for more than a few minutes.  AR 295.  She also reported dropping things because she lost strength and control in her hands and arms.  *Id.*

At the hearing, Arcelia B. testified that she stopped working as a cook because she would have accidents in the kitchen, such as dropping food trays.  AR 44.  She testified to having sharp pain in both of her wrists, ankles, and right knee, with medication helping to alleviate the pain for periods of time.  AR 45.  She further testified that, on a typical day, she experienced swelling in her hands and wrists for four hours, preventing her from carrying items for a long time.  AR 46.  She indicated that sometimes the back of her hand went numb and caused her to drop a cup of coffee or water.  AR 46.  Arcelia B. also complained of stiffness in her ankles and left knee

and that she could only stand for ten minutes and walk two blocks before needing to sit down. AR 47–48. She stated she often has numbness on her left side, typically when she wakes up. AR 53. Arcelia B. also testified that she started seeing a psychiatrist in September 2016 because she felt depressed. AR 50.

At the time of the hearing, Arcelia B. had a three-year old son. AR 49. She lived in a house with her son and her mother who is on dialysis. AR 54–55. Every week, from Monday to Friday, her sister would come to her house around 7:45 a.m. to take care of her son and clean and cook, and then leave around 2:30 p.m. AR 49, 55, 57. Arcelia B. would help take care of her son as well. AR 57. Arcelia B. testified that on the weekends, her other sister would come to help. AR 55. But her counseling records reflected that she took care of her son and mother on the weekends. *Id.* Arcelia B. explained the inconsistency by stating that she took care of her son and mother one weekend when her sister was out of town. *Id.* She also testified that she would try to do chores around the house but over the last year and a half to two years, her body's condition had worsened. AR 49. Arcelia B. acknowledged that no doctor had placed any limitations on her. AR 56. Dr. Rizvi suggested she use a cane, but she did not do so. AR 56.

### B. Medical Expert Evidence

On December 17, 2014, Dr. Vidya Madala, a state agency reviewer, completed a physical RFC assessment. AR 72. Dr. Madala found that Arcelia B. could occasionally (cumulatively one-third or less of an eight-hour day) lift and/or carry twenty pounds and frequently (cumulatively between one-third and two-thirds of an eight-hour day) lift and/or carry ten pounds. AR 70. Dr. Madala also found that Arcelia B. could stand and/or walk with normal breaks and sit with normal breaks for six hours in an eight-hour workday. AR 71. Dr. Madala

did not find any postural, manipulative, or environmental limitations on Arcelia B.'s ability to work.  AR 71–72.

On May 12, 2015, Dr. Bharati Jhaveri, also a state agency physician, completed Arcelia B.'s physical RFC assessment at the reconsideration level.  AR 92.  Dr. Jhaveri found that Arcelia B. could occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds.  AR 88.  Dr. Jhaveri also found that Arcelia B. had certain postural, manipulative, and environmental limitations, including a limitation of frequent handling and fingering with both hands.  AR 89–90.

### C.  Vocational Expert Testimony

Pagella testified that Arcelia B.'s prior work as a cook was a skilled occupation with a medium level of physical tolerance.  AR 59.  He opined that a person with Arcelia B.'s limitations, as outlined by the ALJ, could not perform her past work as a cook.  AR 59–61.  But, according to Pagella, she could perform light level work, such as a sorter or an assembler.  AR 61.  Pagella opined that if limited to sedentary work, Arcelia B. could perform work as a packer and a sorter.  AR 62.  Pagella further testified that if Arcelia B. were limited to only fine and gross manipulation occasionally, she would not be able to perform any sedentary jobs.  AR 63.

## IV.  The ALJ's Decision

On April 11, 2017, the ALJ issued a written decision denying Arcelia B. DIB and SSI benefits.  AR 14–31.  Following the five-step analysis used by the Social Security Administration to evaluate disability, the ALJ found at step one that Arcelia B. had not engaged in substantial gainful activity since September 26, 2014, her alleged onset date.  AR 22.  The ALJ then proceeded to step two, finding that Arcelia B.'s post-myocardial infarction with cardiac defibrillator implantation secondary to ventricular arrhythmia and rheumatoid arthritis

constituted severe impairments. *Id.* The ALJ noted that Arcelia B. was seeking treatment for depression and anxiety in September 2016 and requested a referral for psychotherapy, but he concluded that the evidence did not indicate that she had a severe mental impairment at the time of the hearing. AR 22–23. At step three, the ALJ found that Arcelia B.'s impairments did not meet or equal any of the listed impairments in 20 C.F.R. Part 404, Subpart 4, Appendix 1. AR 23. The ALJ noted that at the hearing, Arcelia B.'s counsel agreed that her impairments did not meet or equal any listed impairments. *Id.*

After reviewing the record, the ALJ concluded that Arcelia B. had the RFC to perform light work, with the following restrictions: lifting and/or carrying up to twenty pounds occasionally and ten pounds frequently; alternating positions between sitting, standing, and walking for no more than five minutes every hour; climbing ramps and stairs occasionally; stooping, kneeling, balancing, crouching, and crawling occasionally; no climbing of ladders, ropes, or scaffolds; frequent but not constant fine and gross manipulations; no forceful grasping or torqueing; occasional precision feeling; reaching from 75-100% of the expected range of motion occasionally; avoidance of concentrated exposure to extreme temperatures or humidity, or pulmonary irritants; no use of vibrating handing tools; work limited to non-hazardous environments; and avoidance of concentrated exposure to unguarded hazardous machinery. AR 25–26.

In reaching this RFC, the ALJ found that Arcelia B.'s statements regarding the "intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" and that "examination findings and treatment records do not support a reason for [her] activities to be as restricted as she alleged." AR 27. In assessing her RFC, the ALJ explained that Dr. Rizvi consistently documented chronic swelling

and decreased motion of Arcelia B.'s wrists but did not document chronic swelling of her hands. AR 28. He further noted that Dr. Rizvi consistently documented that Arcelia B. had bilateral normal handgrip. *Id*. The ALJ acknowledged the effect joint pain would have on Arcelia B.'s ability to lift heavier objects and considered her testimony that she had difficulty maintaining her grip, "although not to the extent that she reported," and therefore limited her to light work. *Id*. The ALJ also noted that Arcelia B.'s treating physicians did not provide her with any work limitations. AR 29. The ALJ gave some weight to Dr. Madala's RFC assessment at the initial level but more weight to Dr. Jhaveri's RFC assessment at the reconsideration level, as it was more comprehensive in detailing Arcelia B.'s work limitations as well as postural, manipulative, and environmental limitations and took into consideration additional evidence submitted to the record after Dr. Madala's assessment. *Id*.

Based on these findings and the RFC, the ALJ found at step four that Arcelia B. could not perform her past relevant work as a cafeteria cook. AR 30. The ALJ then proceeded to step five and concluded that Arcelia B. is not disabled and could work as a sorter or an assembler. AR 31.

The Appeals Council denied review of the ALJ's decision on December 22, 2017, AR 1–8, making the ALJ's decision the final decision of the Commissioner.

## LEGAL STANDARD

### I. Standard of Review

In reviewing the denial of disability benefits, the Court "will uphold the Commissioner's final decision if the ALJ applied the correct legal standards and supported her decision with substantial evidence." *Bates v. Colvin*, 736 F.3d 1093, 1097 (7th Cir. 2013). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)

(citation omitted) (internal quotation marks omitted). Although the Court reviews the entire record, it does not displace the ALJ's judgment by reweighing facts or making independent credibility determinations. *Beardsley v. Colvin*, 758 F.3d 834, 836–37 (7th Cir. 2014). But reversal and remand may be required if the ALJ committed an error of law or the decision is based on serious factual mistakes or omissions. *Id.* at 837. The Court also looks to "whether the ALJ built an 'accurate and logical bridge' from the evidence to her conclusion that the claimant is not disabled." *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008)). "[H]e need not provide a complete written evaluation of every piece of testimony and evidence," *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)), but "[i]f a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required," *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quoting *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002)).

## II.    Disability Standard

To qualify for DIB or SSI, a claimant must show that she is disabled, i.e. that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Weatherbee v. Astrue*, 649 F.3d 565, 568 (7th Cir. 2011). To determine whether a claimant is disabled, the Social Security Administration uses a five-step sequential analysis. 20 C.F.R. § 404.1520; *Kastner*, 697 F.3d at 646. At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity during the claimed period of disability. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ considers whether the claimant's physical or

mental impairment is severe and meets the twelve-month durational requirement. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairment(s) meet or equal a listed impairment in the Social Security regulations, precluding substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404, Subpt. P, App. 1. If the claimant's impairment(s) meet or medically equal a listing, the individual is considered disabled; if not, the analysis continues to step four. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ assesses the claimant's RFC and ability to engage in past work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can engage in past relevant work, she is not disabled. *Id.* If she cannot, the ALJ proceeds to step five, in which the ALJ determines whether a substantial number of jobs exist that the claimant can perform in light of her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). An individual is not disabled if she can engage in other work. *Id*. The claimant bears the burden of proof on steps one through four, while the burden shifts to the government at the fifth step. *Weatherbee*, 649 F.3d at 569.

## ANALYSIS

In seeking to overturn the ALJ's decision, Arcelia B. argues that (1) substantial evidence does not support the ALJ's RFC findings concerning her ability to lift and perform gross and fine manipulations; and (2) the ALJ improperly assessed her subjective statements about her symptoms.

## I.    Substantial Evidence

Arcelia B. first argues that the ALJ's RFC finding related to her ability to lift and carry and engage in gross and fine manipulations lacks a logical basis. Specifically, Arcelia B. argues that the ALJ improperly ignored issues with her wrists, which prevent her from lifting and carrying to the extent the ALJ found, and instead assumed, that she can lift and carry without the

use of her wrists, an anatomically inconsistent finding. Similarly, Arcelia B. contends that the ALJ did not provide a logical bridge to support his finding that she could frequently perform gross and fine manipulations despite her swollen and motion-limited wrists.

An ALJ must explain how he reaches his conclusion about the RFC of a claimant and support that conclusion with evidence from the record. *See, e.g.*, SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence[.]"); *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) ("The ALJ needed to explain how she reached her conclusions about Scott's physical capabilities[.]"); *Eakin v. Astrue*, 432 F. App'x 607, 611 (7th Cir. 2011) ("The RFC determination should include a discussion describing how the evidence, both objective and subjective, supports the ultimate conclusion.").

Here, the ALJ adequately explained and supported his RFC determination as it relates to Arcelia B.'s ability to lift objects and perform gross and fine manipulations. The ALJ decided that Arcelia B. could do no more than a light level of exertion with additional accommodations. In making this decision with request to the lifting restrictions, the ALJ considered Arcelia B.'s testimony that the swelling of her hands prevented her from being able to lift and carry objects and that she had ceased working as a cook in part because she would drop cookware at her job. The ALJ then proceeded to compare this testimony against Dr. Rizvi's records, where he consistently observed swelling and decreased range of motion of Arcelia B.'s wrist, but did not document chronic swelling of Arcelia B.'s hands. The ALJ also took note that, in the same records, Dr. Rizvi consistently wrote that Arcelia B. had complete handgrip. The ALJ acknowledged the pain in Arcelia B.'s wrists could make lifting and carrying of heavier things more difficult and accounted for her testimony that she had difficulty maintaining grip, though

not "to the extent that she reported" based on her medical records, and thus limited her to the demands of light work. AR 26–28. Therefore, contrary to Arcelia B.'s argument, the ALJ did not completely ignore Arcelia B.'s wrist pain or the fact that lifting requires wrist involvement. Although Arcelia B. disagrees with the ALJ's decision, her mere disagreement as to the interpretation of the medical records does not require remand, particularly where she does not point to any specific evidence the ALJ did not consider that contradicts his conclusions. *See Schmidt*, 395 F.3d at 747. In such a situation, where reasonable minds could differ as to a claimant's limitations, the Court must defer to the ALJ's decision. *See Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) ("We are not allowed to displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations. In fact, even if reasonable minds could differ concerning whether [the claimant] is disabled, we must nevertheless affirm the ALJ's decision denying her claims if the decision is adequately supported." (citations omitted) (internal quotation marks omitted)).

Arcelia B. also argues that the ALJ failed to provide a logical and well-supported bridge from the evidence to his conclusion that she could frequently perform gross and fine manipulations for two-thirds of the workday. In reaching this aspect of Arcelia B.'s RFC, the ALJ considered Arcelia B.'s claims that the swelling of her hands prevented her from doing her previous work and that Dr. Rizvi consistently documented swelling and decreased range of motion in her wrists. The ALJ contrasted that with the fact that, in all of Arcelia B.'s appointments with Dr. Rizvi from March 2014 through December 2016, Dr. Rizvi did not document any chronic swelling of her hands but instead that she had normal handgrip. Arcelia B. does not dispute this record evidence, instead only arguing that the ALJ should have given more weight to the evidence of swelling and her difficulties in using her hands.

But Dr. Jhaveri considered this same information and opined only that Arcelia B.'s mild swelling of the hands and swelling and tenderness of the wrists limited her to frequent handling and fingering with both hands. The ALJ concluded that, considering the evidence at the hearing, these limitations fully accommodated Arcelia B.'s capabilities. AR 29. Initially, Arcelia B. argued that Dr. Jhaveri did not place any manipulation limitations on her, but, in reply, she acknowledges that Dr. Jhaveri's opinion includes such a limitation. Instead, in her reply, Arcelia B. argues that the ALJ should not have given weight to Dr. Jhaveri's opinion because he did not review evidence added to the file between July 7, 2015, and December 6, 2016. Although "[a]n ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion," *Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018), nothing in the record reveals such a significant, new development here. Moreover, the ALJ did not solely rely on Dr. Jhaveri's opinion and Arcelia B. cannot point to any doctor's opinion placing greater limitations on her to suggest that the ALJ's RFC determination is erroneous. *See Dudley v. Berryhill*, --- F. App'x ----, 2019 WL 2152547, at *4 (7th Cir. 2019) (finding no error in ALJ's RFC determination where no doctor's opinion imposed greater limitations on the claimant than those imposed by the ALJ). By referring to Dr. Rizvi's notes from Arcelia B.'s appointments from March 2014 through December 2016 and adopting Dr. Jhaveri's assessment of Arcelia B.'s in his RFC, the ALJ "connected [his] conclusion to the record evidence in a detailed analysis." *Shideler*, 688 F.3d at 312. Therefore, the Court cannot conclude that the ALJ committed reversible error in making the RFC determination.[2]

---

[2] To the extent Arcelia B. also challenges the ALJ's assessment of her limitations based on her ability to take care of her mother and son, the Court addresses this argument in connection with her challenge to the ALJ's assessment of her subjective symptoms.

## II.	Credibility Determination

Arcelia B. also argues that the ALJ erroneously assessed her subjective statements about the intensity, persistence, and limiting effects of her symptoms in determining her RFC. The ALJ must, pursuant to Social Security Ruling 16-3p, engage in a two-part analysis for symptom evaluation. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). First, the ALJ determines whether the claimant has an "underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *3. If so, the ALJ "evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities for an adult." *Id.* At step two, the ALJ "examine[s] the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *5. The Court reviews the ALJ's assessment of a claimant's subjective symptoms with "special deference" and will overturn it only if "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). A decision is "patently wrong" "when the ALJ's determination lacks any explanation or support." *Elder*, 529 F.3d at 413.

The ALJ reviewed the evidence and concluded that Arcelia B.'s statements about her symptoms were not entirely consistent with the medical and other evidence in the record. Specifically, as related to her physical condition, the ALJ noted that although she claimed her physical problems because of her rheumatoid arthritis were getting worse, and Dr. Rizvi made note of such worsening at almost every visit, the actual results from her physical examinations did not suggest such a decline. AR 27. The ALJ also considered Arcelia B.'s testimony that no

doctor had placed any limitations on her. AR 27. Arcelia B. takes issue with this latter statement, arguing that the ALJ inappropriately relied on the lack of work-related limitations from her treating physicians because those doctors had no reason to set any such limitations at a time when she was no longer working. Arcelia B. fails to explain or provide support for why the ALJ should not have taken the lack of work-related restrictions into account in addressing the limiting effects of her symptoms.[3] *Cf. Wrobel v. Berryhill*, No. 17 cv 3129, 2018 WL 3574824, at *4 (N.D. Ill. July 25, 2018) (finding no error in ALJ's reasoning where, among other things, no doctor provided limitations on the claimant's ability to work). Instead, the record supports the ALJ's consideration of a lack of limitations, particularly because Dr. Rizvi began seeing Arcelia B. for her rheumatoid arthritis while she remained employed and the records do not indicate that Dr. Rizvi placed any restrictions on Arcelia B. that suggested she should stop working or limit her work-related activities. *Cf. Griffin v. Barnhart*, 198 F. App'x 561, 565 (7th Cir. 2006) (finding substantial evidence to support ALJ's credibility determination where, among other things, the testifying doctors determined that the claimant no longer had work-related limitations). Further, even if Arcelia B.'s treating physicians had placed work limitations on her, when evaluating medical evidence, the ALJ does not have to accept conclusory statements made by a treating physician about a patient's ability to work because the determination of a claimant's ability to work is reserved for the ALJ. 20 C.F.R. § 404.1527(d)(1).

Arcelia B. also argues that the ALJ ignored the fact that she structured her life to accommodate the symptoms of her rheumatoid arthritis. This, Arcelia B. claims, violates the directive in SSR 16-3p that the ALJ consider the claimant's treatment history in light of whether "[a]n individual may have structured his or her activities to minimize symptoms to a tolerable

---

[3] Arcelia B. does not argue that the ALJ should have sought further information from her treating physicians as to any limitations caused by her conditions.

level by avoiding physical activities or mental stressors that aggravate his or her symptoms."
SSR 16-3p, 2017 WL 5180304, at *9.  But the ALJ properly addressed this factor, recounting
Arcelia B.'s daily activities and evaluating those activities and her claimed restrictions in light of
the medical record.  *See Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011) ("An ALJ may
consider a claimant's daily activities when assessing credibility, but ALJs must explain
perceived inconsistencies between a claimant's activities and the medical evidence." (citations
omitted)).  After analyzing Arcelia B.'s symptoms, the ALJ considered the types of activities that
Arcelia B. performed without her sister's assistance.  He took into consideration Arcelia B.'s
testimony that she would wake up before her sister arrived to take care of her son and that her
sister would leave at 2:30 p.m. every day.  Additionally, the ALJ noted that Arcelia B. had told
her therapist that she was the caregiver for her mother and son over the weekends, as well as the
fact that she claimed to have help from another sister over the weekends.  He then reasoned that
it would not be reasonable to expect that Arcelia B.'s mother and son would only require
assistance when her sister visited her.  The ALJ specifically acknowledged that caring for her
mother and son did not equal competitive work but nonetheless concluded that her examination
findings and treatment records did not support the restrictions she alleged.  *See Kittelson v.*
*Astrue*, 362 F. App'x 553, 558 (7th Cir. 2010) (finding that discrepancy between a claimant's
testimony about her impairment and evaluations of doctors who found no objective evidence
provided a sufficient basis for the ALJ's adverse credibility determination).  In considering
Arcelia B.'s activities without the assistance of her family and Arcelia B.'s medical records, the
ALJ did not ignore how Arcelia B. structured her lifestyle to accommodate her symptoms.

Relatedly, Arcelia B. claims the ALJ improperly discounted her reports to Dr. Rizvi that,
in the weeks after her hearing, her symptoms had worsened and left her bedridden for several

days.  She argues that the ALJ's literal interpretation of her testimony of being bedridden is a cause for remand.  While the ALJ remarked on the fact that Arcelia B.'s reports of pain changed after the hearing, the ALJ did not completely discount those reports or conclude they were inaccurate solely because of the inconsistency with her testimony at the hearing.  *See* SSR 16-3p, 2017 WL 5180304, at *9 ("[I]nconsistencies in an individual's statements made at varying times does not necessarily mean they are inaccurate.").  Instead, the ALJ compared her subjective statements with her doctors' notes and physical examination results, finding those records did not support the extent of Arcelia B.'s claimed limitations.  Because the medical records, specifically the relatively consistent physical examination results, did not reflect significant changes in Arcelia B.'s symptoms or support more extensive limitations on her activity, the Court cannot conclude that the ALJ's assessment of Arcelia B.'s subjective statements was patently wrong and requires remand.  *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("As long as the ALJ's decision is supported by substantial and convincing evidence, it deserves this court's deference.").

## CONCLUSION

For the foregoing reasons, the Court affirms the ALJ's decision.  The Court grants the Commissioner's motion for summary judgment [19] and enters judgment in favor of the Commissioner and against Arcelia B.


Dated: July 30, 2019

SARA L. ELLIS
United States District Judge